UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO

| | | |
|---|---|---|
| JENNIFER NINA MORUZZI, Plaintiff, | : | CASE NO. 4:17-CV-287 |
| vs. | : | OPINION & ORDER [Resolving Doc. 1] |
| COMMISSIONER OF SOCIAL SECURITY, Defendant. | : | |

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Jennifer Nina Moruzzi seeks review of the Social Security Administration's denial of supplemental security income (SSI).[1] Magistrate Judge George J. Limbert recommended affirming the benefits denial.[2] Plaintiff raises two objections.[3]

For the following reasons, the Court **OVERRULES** Plaintiff's objections; **ADOPTS IN PART** and **REJECTS IN PART** the Magistrate Judge's Report and Recommendation (R&R); and **AFFIRMS** the decision of the Commissioner of Social Security.

## I. BACKGROUND

On May 30, 2013, Plaintiff Moruzzi applied for supplemental security income.[4] She alleged she was disabled from February 1, 2012 because of her aversion to people, a mental breakdown, back pain, a kidney cyst, anxiety, and depression.[5]

---

[1] Doc. 1.
[2] Doc. 11.
[3] Doc. 12.
[4] Doc. 8 at 158.
[5] *Id.* at 158, 182.

The Social Security Administration ("SSA") denied Moruzzi's application initially and on reconsideration.[6] On August 6, 2015, Administrative Law Judge Jeffrey P. La Vicka conducted a hearing on her application.[7]

At the hearing, the ALJ considered the treating-source opinions from psychiatrist Dr. Koteswara Kaza.

On August 16, 2013, Dr. Kaza completed a medical statement and said he had diagnosed Plaintiff with depressive disorder.[8] He identified supportive clinical findings of appetite disturbance with weight change, sleep disturbance, mood disturbance, recurrent panic attacks, anhedonia or pervasive loss of interests, social withdrawal or isolation, decreased energy, feelings of guilt/worthlessness, difficulty thinking or concentrating, and suicidal ideations.[9]

He opined on what tasks and activities Plaintiff was markedly limited in performing[10] and concluded that Plaintiff was incapable of even low-stress work.[11] He concluded that her impairments would likely produce "good" and "bad" days and that she would likely be absent from work due to impairments or treatment more than three times per month.[12]

---

[6] *Id.* at 64-104.
[7] *Id.* at 33.
[8] *Id.* at 265.
[9] *Id.* at 266.
[10] Specifically, Dr. Kaza opined that Plaintiff was markedly limited in the ability to understand and remember detailed instructions; to carry out detailed instructions; to maintain attention and concentration for extended periods; to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance; to sustain ordinary routine without supervision; to make simple work related decisions; to complete a normal workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; to accept instructions and to respond appropriately to criticism from supervisors; to get along with co-workers or peers without distracting them or exhibiting behavioral extremes; to be aware of normal hazards and take appropriate precautions; to travel to unfamiliar places or use public transportation; and to set realistic goals or make plan independently. *Id.* at 268-70.
[11] *Id.* at 268-71.
[12] *Id.* at 271-72.

Medical management notes from September and October 2013 showed improvement.[13] Plaintiff had a calm and cooperative affect.[14] Her mood was improved and she had no anxiety.[15]

Dr. Kaza treated Plaintiff again on April 17, 2015. In his treatment notes, Dr. Kaza reported that Plaintiff's paranoia, depression, and nightmares had improved.[16] He noted that Moruzzi had good insight and judgment, was verbal, and was pleasant.[17] He noted that her behavior was depressed, anxious, irritable, flat, and labile, but that she was cooperative and of average intelligence.[18] He noted no signs of aggression, self-abuse, hallucinations, or delusions and that her thought process was logical.[19] He rated the intensity of her anxiety, depression, mood swings, and paranoia symptoms as "moderate."[20]

On June 19, 2015, Dr. Kaza wrote a letter about his treatment for Plaintiff's depressive disorder.[21] He again gave the opinion that Plaintiff was markedly limited in performing certain tasks and activities and gave the same opinion from above regarding the effect her impairments would have on her work.[22]

At the hearing before the ALJ, Plaintiff testified. Plaintiff testified that she became disabled on February 1, 2012 due to a nervous breakdown.[23] She had not worked since that time and has not looked for a job.[24]

---

[13] *Id.* at 318-21.
[14] *Id.*
[15] *Id.*
[16] *Id.* at 377.
[17] *Id.* at 379.
[18] *Id.*
[19] *Id.* at 378.
[20] *Id.* at 381.
[21] *Id.* at 400.
[22] *Id.*
[23] *Id.* at 42.
[24] *Id.*

Plaintiff also testified that her back pain interfered with her ability to work.[25] She testified that her back pain worsens when she performs too much work at a time, walks up and down the stairs, or if she stands for about 25 to 30 minutes.[26] But Plaintiff also testified that she had had no back surgeries, never went to physical therapy for her back, and took no narcotic pain medications for her back.[27] She explained her failure to seek any back pain medication relief by claiming that she did not like taking narcotics, but that she took hot baths and showers to help with the pain.[28]

She testified that she could perform household chores, prepared meals, washed some dishes by hand, did laundry, and vacuumed her house.[29] Plaintiff testified that she performed these chores with her daughter's help.[30]

The ALJ determined that Plaintiff had the residual functional capacity to perform light work with the following limitations:

> "requires a sit/stand option allowing the person to briefly, for one to two minutes, alternate sitting or standing positions at thirty minute intervals without going off task; can occasionally climb ramps and stairs, balance, stop, knell, crouch, crawl but can never climb ladders, ropes or scaffolds; must avoid concentrated exposure to extreme cold and heat, wetness and humidity, and all exposure to unprotected heights, hazardous machinery, and commercial driving; work is limited to simple, routine, and repetitive tasks, requiring only simple decisions, free of fast-paced production requirements with few workplace changes; and no more than occasional interaction with the public, co-workers, and supervisors.[31]

On August 27, 2015, the ALJ denied Plaintiff's application for SSI.[32] The Appeals Council denied review on January 16, 2016, rendering the ALJ's conclusion the Commissioner's final decision.[33]

---

[25] *Id.* at 44.
[26] *Id.* at 50-51.
[27] *Id.* at 45-46.
[28] *Id.* at 52-53.
[29] *Id.* at 46-48.
[30] *Id.* at 55-56.
[31] *Id.* at 20-21.
[32] *Id.* at 13-32.
[33] *Id.* at 5-12.

On February 10, 2017, Plaintiff Moruzzi filed this action seeking review of the Commissioner's final decision.[34] After a referral, on December 22, 2017, the Magistrate Judge filed an R&R, recommending that the Court affirm the Commissioner's final decision.[35]

Plaintiff asserts two objections to the R&R.[36] Her objections concern the ALJ's consideration of Dr. Kaza's treating-source opinion, mental residual functional capacity assessment, and credibility determination. Plaintiff does not object to any other parts of the R&R.[37]

## II. LEGAL STANDARD

The Federal Magistrates Act requires a district court to conduct a *de novo* review only of those portions of the R&R to which the parties object.[38] The district court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."[39]

When reviewing an ALJ's disability determination under the Social Security Act, a district court reviews whether the ALJ's decision is "supported by substantial evidence and [is] made pursuant to proper legal standards."[40] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[41] Substantial evidence is more than a scintilla of evidence, but less than a preponderance.[42]

---

[34] Doc. 1.
[35] Doc. 11.
[36] Doc. 12. The Commissioner filed a response. Doc. 13.
[37] *See* Doc. 12.
[38] 28 U.S.C. § 636(b)(1).
[39] *Id.*
[40] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see also* 42 U.S.C. § 405(g).
[41] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations omitted).
[42] *Id.*

A district court should not try to resolve "conflicts in evidence[] or decide questions of credibility."[43] A district court also may not reverse an ALJ's decision when substantial evidence supports it, even if the court would have made a different decision.[44]

To establish disability under the Social Security Act, a plaintiff must show that she cannot engage in any substantial gainful activity because of a "medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[45]

## III. DISCUSSION

### A. ALJ's Consideration of Treating-Source Opinion and Mental Residual Functional Capacity Analysis

In her first objection, Plaintiff argues that (1) the ALJ erred by not giving Dr. Kaza's medical opinion controlling weight, and (2) the ALJ's mental residual capacity analysis was not supported by substantial evidence.[46] The Court disagrees with Plaintiff on both issues.[47]

#### 1. Weight Given to Dr. Kaza's Treating-Source Opinion

First, the Court finds that the ALJ stated sufficient reasons for not giving Dr. Kaza's opinion controlling weight.

Under the treating physician rule, "[t]reating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable

[43] *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).
[44] *See Siterlet v. Sec'y of Health & Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987); *see also Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003) (holding that ALJ's decision cannot be overturned so long as ALJ's decision was supported by substantial evidence).
[45] 42 U.S.C. § 423(d)(1)(A); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).
[46] Doc. 12 at 2-7.
[47] Plaintiff asserted no objections to the Magistrate Judge's recommendation regarding the ALJ's consideration of Dr. Mark Shivers's opinion. The Court therefore **ADOPTS** the Magistrate Judge's recommendation on this issue.

clinical and laboratory diagnostic techniques;' and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'"[48]

An ALJ can give a treating source's opinion less than controlling weight, however, if he gives "good reasons" for doing so.[49] "Good reasons" are reasons that are sufficiently specific to make clear to any subsequent reviewers the weight given to the treating physician's opinion and the reasons for that weight.[50]

In deciding the weight to give to a treating physician's opinion, the ALJ needs to consider such factors as (1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the source; and (6) any other factors that tend to support or contradict the opinion.[51] An ALJ is not required to provide "an exhaustive factor-by-factor analysis."[52]

Here, the ALJ gave "no great weight" to Dr. Kaza's treating-source opinion that Plaintiff "would be unable to perform even low stress work" and that "her mental conditions would likely cause good and bad days and she would likely be absent from work more than three times per month as a result of her impairments or treatment."[53]

The Court finds that the ALJ gave "good reasons" for this decision.

---

[48] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c )(2)).
[49] *Id.*
[50] *Id.*
[51] *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 747 (6th Cir. 2007).
[52] *See Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011).
[53] Doc. 8 at 25.

**a. *Dr. Kaza's Opinion on Moruzzi's Employability***

First, the ALJ properly disregarded Dr. Kaza's opinion on questions reserved for the Commissioner. Only a treating source's medical opinions are entitled to deference.[54] Treating physician opinions on employability issues are not medical opinions, and therefore not deserving of any particular weight.[55]

Here, Dr. Kaza's treating source statement opined, for the most part, on what work activities Plaintiff Moruzzi could potentially perform based on his evaluation of her. For example, Dr. Kaza opined that Plaintiff Moruzzi was "markedly limited in her ability to . . . perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance."[56] Thus, to the extent Dr. Kaza's opinions concerned whether Moruzzi was employable, the ALJ was not required to give any weight to those opinions.

**b. *Magistrate Judge's Consideration of GAF Score***

Second, the ALJ provided sufficiently good reasons to give Dr. Kaza's opinion less than controlling weight, even as to medical questions.

Moruzzi argues that the ALJ wrongly relied on Plaintiff's Global Assessment of Functioning (GAF) score to give Dr. Kaza's opinion on her mental limitations less than controlling weight.[57] A January 18, 2013 psychiatric evaluation gave Plaintiff a moderate GAF score of 55.[58]

A GAF score is "a subjective determination that represents the clinician's judgment of the individual's overall level of functioning."[59] Consequently, the Sixth Circuit has held that "[a] GAF score is . . . not dispositive of anything in and of itself, but rather only significant to the extent that

---

[54] *Turner v. Comm'r of Soc. Sec.*, 381 F. App'x 488, 492-93 (6th Cir. 2010) (citing 20 C.F.R. §§ 404.1527(d), 416.927(d)).
[55] *Id.*
[56] Doc. 8 at 400; *see also id.* at 269.
[57] Doc. 12 at 3-4.
[58] Doc. 8 at 303.
[59] *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 276 (6th Cir. 2009) (internal quotation marks and citation omitted).

it elucidates an individual's underlying mental issues."[60] In this light, the Magistrate Judge did err in placing too much emphasis on the GAF score to argue that the ALJ had provided good reasons for giving less weight to Dr. Kaza's opinion.

Nevertheless, substantial evidence other than the GAF score still supported the ALJ's decision to give Dr. Kaza's opinion "no great weight." The ALJ identified non-GAF score portions of Dr. Kaza's treatment notes in his reasoning. The ALJ noted that Dr. Kaza's latest treatment notes showed that Plaintiff had good insight and judgment; was pleasant and verbal; reported no self-abuse, aggressiveness, or hallucinations; had a logical thought process; and had improved in her mental health.[61] The ALJ found that these findings contradicted Dr. Kaza's assessment that Plaintiff could only perform low-stress work.[62] The Court finds that, even if the GAF score was considered, the ALJ provided sufficiently other good reasons for giving Dr. Kaza's opinion less than controlling weight.

To the extent that some other evidence in Dr. Kaza's reports supported, rather than contradicted, his opinions on Moruzzi's mental limitations,[63] the Court cannot weigh the conflicting evidence. Here, substantial evidence exists to support the ALJ's decision not to give Dr. Kaza's opinion controlling weight.

**2. ALJ's Mental Residual Functional Capacity Determination**

Next, the Court finds that the ALJ's mental residual functional capacity assessment, based in part on Dr. Kaza's treatment notes, was supported by substantial evidence.

Moruzzi first argues that the Magistrate Judge erred in finding that the ALJ had properly determined Moruzzi's mental residual functional capacity by relying on non-examining state

---

[60] *Oliver v. Comm'r of Soc. Sec.*, 415 F. App'x 681, 684 (6th Cir. 2011).
[61] Doc. 8 at 24-25.
[62] *Id.* at 25.
[63] *See* Doc. 12 at 4.

agency consultants.[64] Moruzzi next argues that the ALJ did not point to any specific medical facts or non-medical evidence to support his mental residual functional capacity determination.[65]

The Magistrate Judge did err in finding that the ALJ had properly relied on a state agency consultant's evaluation of Plaintiff's mental capacity. The ALJ did not cite the state agency's medical opinion in his mental residual functional capacity analysis.[66] And it was not the Magistrate Judge's role to "scour the record for evidence and expert reasoning which the ALJ *might* have relied on and which *could* support [the ALJ's decision] *if* the ALJ actually considered it."[67]

Nevertheless, the Court finds that the ALJ otherwise cited to substantial evidence to support his mental residual functional capacity assessment.

Residual functional capacity reflects "the most a claimant can do despite her limitations."[68] Here, the ALJ determined that Plaintiff had the mental residual functional capacity to perform "simple, routine, and repetitive tasks, requiring only simple decisions, free of fast-paced production requirements, with few workplace changes" and that she "requires no more than occasional interaction with the public, co-workers, and supervisors."[69]

The ALJ supported that assessment by citing to Dr. Kaza's reports on Plaintiff's mental condition.

The ALJ noted that Dr. Kaza had reported that Plaintiff had "displayed good insight and judgment and she was pleasant and verbal."[70] The ALJ noted that Dr. Kaza found that Plaintiff's

---

[64] *Id.* at 5-6.
[65] *Id.* at 6-7.
[66] *See* Doc. 8 at 26 (considering "the state agency medical consultant's opinions that the claimant has no exertional limitations.").
[67] *Karger v. Comm'r of Soc. Sec.*, 414 F. App'x 739, 754 (6th Cir. 2011) (emphasis in original).
[68] *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 190 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1545 and 416.945).
[69] Doc. 8 at 21.
[70] *Id.* at 23.

"paranoia and depression had slightly improved and her nightmares were improved."[71] And the ALJ noted that Dr. Kaza reported that Plaintiff's mental impairments were moderate.[72]

But the ALJ also noted that Dr. Kaza had reported that Plaintiff was "depressed and anxious and irritable;" that "her affect was flat and labile with mood swings" and that Plaintiff had depressive disorder; adjustment disorder, with anxiety; and major depressive disorder, recurrent without psychosis.[73] The ALJ seemingly found the Dr. Kaza's disability opinion inconsistent with Dr. Kaza's examination findings.

The Court finds that the ALJ weighed the mental limitations reported in Dr. Kaza's treatment notes and properly determined Plaintiff's mental residual functional capacity. Thus, substantial evidence supports the ALJ's mental residual functional capacity assessment.

For these reasons, the Court **OVERRULES** Plaintiff's first objection. The Court **REJECTS** portions of the R&R where the Court has noted the Magistrate Judge erred, but **ADOPTS** all other portions of the R&R on this issue.

**B. ALJ's Credibility Determination**

Plaintiff next objects that the ALJ improperly found Plaintiff's statements about her symptoms not credible.[74] The Court denies this objection.

20 C.F.R. § 404.1529(a) describes a two-part process for assessing the credibility of an individual's subjective statements about her symptoms. First, the ALJ must determine whether a claimant has a medically determinable physical or mental impairment that can reasonably be expected to produce the claimed symptoms. Second, the ALJ must evaluate the intensity and

[71] *Id.* at 24.
[72] *Id.*
[73] *Id.*; *see also id.* at 23.
[74] Doc. 12 at 7-8.

persistence associated with those symptoms to determine how those symptoms limit a claimant's ability to work.

When evaluating the intensity and persistence of a claimant's symptoms, consideration is given to objective medical evidence and other evidence, including: (1) daily activities; (2) the location, duration, frequency, and intensity of pain or other symptoms; (3) precipitating and aggravating factors; (4) the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; (5) treatment, other than medication, received for relief of pain or other symptoms; (6) any measures used to relieve pain or other symptoms; and (7) other factors concerning functional limitations and restrictions due to pain or other symptoms.[75]

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility. Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence."[76]

First, Moruzzi argues that her failure to obtain treatment cannot be held against her since her reasons for not pursuing treatment may have been due to indigence.[77] In his decision, the ALJ found Moruzzi was not credible because she had not taken any medication for her pain, despite her physician's recommendation.[78] The ALJ also noted that Moruzzi had no ongoing physical therapy or other treatment.[79] Moruzzi argues that the ALJ failed to consider whether Moruzzi had good cause for not taking medication or pursuing additional treatment.[80]

---

[75] 20 C.F.R. § 404.1529(c).
[76] *Calvin v. Comm'r of Soc. Sec.*, 437 F. App'x 370, 371 (6th Cir. 2011) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)).
[77] Doc. 12 at 7.
[78] Doc. 8 at 25.
[79] *Id.*
[80] Doc. 12 at 7.

"In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment. A failure to do so may cast doubt on a claimant's assertions of disabling pain."[81] Nevertheless, failure to seek medical care "should not be a determinative factor in a credibility assessment."[82]

To start, the ALJ did in fact consider why Moruzzi did not take any medication for her pain. The ALJ noted that Moruzzi herself testified that she did not take the medication because she preferred not taking narcotics.[83] Moruzzi never testified to any inability to afford the medication.[84] Given this testimony, the Court finds that there was substantial evidence for the ALJ to discredit Moruzzi's claims about her pain.

To the extent that the ALJ failed to inquire why Moruzzi did not pursue additional treatment for her pain, the Court finds that this is not grounds for reversing the ALJ's decision. In this case, Plaintiff points to no evidence showing that Moruzzi's indigent status hindered her from seeking further treatment for her back pain.[85] And "[i]t is not the Court's function to comb through the entire record to develop a related argument on her behalf."[86] Nor is it the ALJ's burden to elicit favorable testimony from Plaintiff regarding her symptoms.[87]

Moreover, it is not clear that Moruzzi's failure to obtain further treatment was the "determinative factor" in the ALJ's negative credibility determination. The ALJ also based his

[81] *Strong v. Soc. Sec. Admin.*, 88 F. App'x 841, 846 (6th Cir. 2004).
[82] *Blankenship v. Bowen*, 874 F.2d 1116, 1124 (6th Cir. 1989).
[83] Doc. 8 at 24.
[84] *See id.* at 52-53.
[85] *See* Doc. 12 at 7.
[86] *Handzel v. Comm'r of Soc. Sec.*, No. 1:13-CV-01779, 2014 WL 2611858, at *5 (N.D. Ohio June 11, 2014) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)).
[87] *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990) ("The claimant has the ultimate burden to establish an entitlement to benefits by proving the existence of a disability . . . .").

negative credibility determination on objective medical evidence, such as radiology studies and physical examinations, which contradicted Moruzzi's subjective testimony.[88]

Second, Moruzzi argues that the ALJ incorrectly relied on evidence of Moruzzi's ability to perform daily activities as evidence of a lack of mental or physical disability.[89] Moruzzi points to conflicting evidence that Moruzzi's daughter and mother actually cared for her and performed most of the daily activities.[90] Moruzzi also argues that there is other evidence supporting Moruzzi's physical and mental limitations.[91]

Again, however, the Court cannot weigh conflicting evidence. Rather, the Court must defer to the ALJ's credibility determination where, as here, the ALJ pointed to substantial evidence to support his negative credibility determination. As explained, there were radiology studies and physical examinations contradicting Moruzzi's testimony about the severity of her physical pain. Dr. Kaza's treatment notes indicated only moderate mental limitations.

The Court therefore **OVERRULES** Plaintiff's second objection and **ADOPTS** the Magistrate Judge's recommendation on this issue.

## IV. CONCLUSION

For the above reasons, the Court **OVERRULES** Plaintiff's objections; **ADOPTS IN PART** and **REJECTS IN PART** the R&R; and **AFFIRMS** the decision of the Commissioner of Social Security.

IT IS SO ORDERED.

Dated: February 5, 2018

*s/ James S. Gwin*
JAMES S. GWIN
UNITED STATES DISTRICT JUDGE

---

[88] Doc. 8 at 25.
[89] Doc. 12 at 8.
[90] *Id.*
[91] *Id.* at 7.